**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
633 Howard St.
San Francisco, CA 94105
Tel: (415) 651-7990

**CLARKSON LAW FIRM, P.C.**
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Mark I. Richards (SBN 321352)
*mrichards@clarksonlawfirm.com*
Cassandra Rasmussen (*phv forthcoming*)
*crasmussen@clarksonlawfirm.com*
Jiaming Zheng (SBN 363184)
*jzheng@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GINA BARTONE and MATEO CANU, individually and on behalf of all others similarly situated, | Case No.:  3:26-cv-01897 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| | **JURY TRIAL DEMAND** |
| v. | |
| META PLATFORMS, INC and LUXOTTICA OF AMERICA, INC. | |
| Defendants. | |

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

Plaintiffs Mateo Canu and Gina Bartone ("Plaintiffs"), individually and on behalf of all others similarly situated, as more fully described below (the "Class" and "Class Members"), bring this class action Complaint against Defendant Meta Platforms, Inc. ("Meta") and Defendant Luxottica of America, Inc. ("Luxottica") (collectively, "Defendants"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

1.    The new AI economy holds extraordinary promise to deliver life-improving benefits. But it's also defined by grave risks, including mass surveillance, the erosion of privacy, and the relentless extraction of personal data from the lives of ordinary people, data on which generative AI tools are trained and depend.

2.    The general public is increasingly concerned about who is watching, what is being captured, and how that information will be used. From government agencies targeting individuals based on personal characteristics to private companies racing for AI dominance, the incentives for powerful interests to observe, record, analyze, and store the most personal details of people's lives have never been greater. Consumers are worried, regulators are scrambling, and the tech companies driving the AI economy know exactly how sensitive it all is. For ordinary people, privacy is now an everyday worry.

3.    Meta knows this. It also knows that skepticism toward AI products is growing, that its own long record of privacy failures has compounded the problem, and that trust around privacy is the key to turning widespread concern into widespread adoption. Against this backdrop, Meta marketed its new line of AI "smart" Glasses as responsible, safe, and engineered to address the privacy concerns that define the AI era. It did so by centering its campaign around a simple, reassuring promise: the Glasses were ***"designed for privacy, controlled by you."***

4.    That promise is false. Recent whistleblower accounts reveal that when consumers use the Meta AI Glasses' AI features, the footage is not processed privately or locally. Instead, videos captured through the Glasses, including highly sensitive moments inside homes and other private spaces, are transmitted to Meta's servers and then routed to a subcontractor in Kenya, where human

CLASS ACTION COMPLAINT

workers manually view and label the footage to train Meta's AI models.

5.     These workers report seeing everything. People changing clothes, using the bathroom, engaging in sexual activity, handling financial information, and conducting other private activities inside their homes that no reasonable consumer would ever expect a stranger to watch. They also report that Meta's touted "face anonymization" does not work. If the reviewers raise concerns about the highly personal nature of what they are forced to watch and label, they are fired.

6.     No reasonable consumer would understand "designed for privacy, controlled by you" and similar promises like "built for your privacy" to mean that deeply personal footage from inside their homes would be viewed and catalogued by human workers overseas. Meta chose to make privacy the centerpiece of its pervasive marketing campaign while concealing the facts that reveal those promises to be false.

7.     By affirmatively claiming that the Glasses were designed to protect privacy, Meta assumed a duty to disclose material facts that would inform a reasonable consumer's decision to purchase the product. Instead, Meta hid the alarming reality: that use of the AI features results in a stranger halfway around the world watching the most private moments of a person's life. These material omissions, together with the affirmative material privacy promises and representations, are referred to as the **"Challenged Representations and Omissions."**

8.     This nationwide class action seeks to hold Meta responsible for its affirmatively false advertising and failure to disclose the true nature of surveillance and its connection to the company's AI data collection pipeline. Consumers purchased these Glasses believing Meta's privacy assurances. They did not, and could not reasonably, understand that their bedrooms, bathrooms, families, bodies, and more would be exposed to strangers around the world. Meta's conduct violates state consumer protection laws, offends basic notions of privacy, and exemplifies the kind of AI-era surveillance harms that demand accountability.

## II.     JURISDICTION

9.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of this forum by conducting substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.

### III.     DIVISIONAL ASSIGNMENT

11.     This civil action arises in San Mateo County, California. Accordingly, assignment to the San Francisco Division is proper pursuant to Civil L.R.3-2(c) and Civil L.R.3-2(d).

### IV.     VENUE

12.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant Meta Platforms Inc. resides in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

### V.     PARTIES

13.     **Plaintiff Mateo Canu** is a citizen of California and has resided in Los Angeles County, California, at all times relevant to this Complaint. Canu purchased the Meta AI Glasses from a Sunglass Hut store after relying on Meta's pervasive marketing campaign and believing that the Meta AI Glasses were "designed for privacy" and would not transmit his private data without his consent.

14.     In deciding to make the purchase, Canu viewed and relied on Defendants' advertising and marketing, including the Challenged Representations and Omissions, leading Plaintiff Canu to believe that the Meta AI Glasses, were designed for and would protect his privacy. Canu relied heavily on this when deciding to purchase the Product.

15.     At the time of purchase, Canu did not know the Challenged Representations and Omissions were false and deceptive—i.e., that the Meta AI Glasses were not designed for and would not protect his privacy.

16.     Canu did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' advertising and marketing that contradicted the prominent Challenged

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

Representations and Omissions or otherwise suggested that the Meta AI Glasses would not have the advertised privacy protections.

17.    Canu would not have purchased the Products or would not have paid as much for the Products, had Defendants not made the false and misleading Challenged Representations and Omissions and/or had Canu otherwise known that the Challenged Representations and Omissions were not true—i.e., that the Products did not contain the advertised privacy protections.

18.    Canu desires to purchase Defendants' products again if the Challenged Representations and Omissions were true—i.e., if Defendants' products were designed for and actually protected his privacy, as advertised.

19.    Canu is not personally familiar with the technology behind the Products or their manufacturing and development, as Canu does not possess any relevant specialized knowledge, skill, experience, or education. In the future, Plaintiff Canu will therefore be unable to determine the truth and accuracy of the Products' Challenged Representations and Omissions.

20.    Canu is, and continues to be, unable to rely on the truth of the Challenged Representations and Omissions on the Products' advertising and marketing.

21.    Defendants continue to market and sell the Products and have not taken appropriate action to make clear the falsity or misleading nature of the Challenged Representations and Omissions. Accordingly, Canu is at risk of reasonably, but incorrectly, assuming that Defendants have fixed the Products to perform as advertised and that their Product features are accurately described.

22.    **Plaintiff Gina Bartone** is a citizen of New Jersey and has resided in Millstone, New Jersey, at all times relevant to this Complaint. Bartone purchased the Meta AI Glasses from the Meta Store after relying on Defendants' pervasive marketing campaign and believing that the Meta AI Glasses were "designed for privacy" and would protect her privacy.

23.    In deciding to make the purchase, Bartone viewed and relied on Meta's advertising and marketing, including the Challenged Representations and Omissions, leading Bartone to believe that the Meta AI Glasses were designed for and would protect her privacy. Bartone relied on this when deciding to purchase the Product.

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

24.   At the time of purchase, Bartone did not know the Challenged Representations and Omissions were false and deceptive—i.e., that the Meta AI Glasses were not designed for and would not protect her privacy.

25.   Bartone did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' advertising and marketing that contradicted the prominent Challenged Representations and Omissions or otherwise suggested that the Meta AI Glasses would not live up to the advertised privacy representations.

26.   Bartone would not have purchased the Products or would not have paid as much for the Products, had Defendants not made the false and misleading Challenged Representations and Omissions and/or had Bartone otherwise known that the Challenged Representations were not true.

27.   Bartone desires to purchase Defendants' products again if the Challenged Representations and Omissions were true.

28.   Bartone is not personally familiar with the technology behind the Products or their manufacturing and development, as Bartone does not possess any relevant specialized knowledge, skill, experience, or education. In the future, Bartone will therefore be unable to determine whether the Products' Challenged Representations and Omissions are true.

29.   Bartone is, and continues to be, unable to rely on the truth of the Challenged Representations and Omissions on the Products' advertising and marketing.

30.   Defendants continue to market and sell the Products and have not taken appropriate action to make clear the falsity or misleading nature of the Challenged Representations and Omissions. Accordingly, Bartone is at risk of reasonably, but incorrectly, assuming that Defendants have fixed the Products to perform as advertised and that the Product features are accurately described.

31.   **Defendant Meta Platforms, Inc.** is a global technology company that provides social media platforms and communication services to users worldwide as well as advertising services to millions of companies. Meta is comprised of several well-known platforms, including Facebook, Instagram, Threads, and WhatsApp. Meta is incorporated in Delaware with its principal place of business located at 1 Meta Way, Menlo Park, CA 94025.

32.    At all relevant times, Meta was conducting business in the State of California, including the Class Period. Meta is one of the owners, manufacturers, marketers, and distributors of the Products, and is the company that created, authorized, and controlled the use of the Challenged Representations and Omissions to market the Meta AI Glasses. Meta and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations and Omissions on the Products were prepared, authorized, ratified, and/or approved by Meta and its agents, and were disseminated throughout California and the nation by Meta and its agents to deceive and mislead consumers in the State of California and throughout the United States into purchasing the Meta AI Glasses.

33.    **Defendant Luxottica of America, Inc.** is an Ohio corporation with its principal place of business located at 4000 Luxottica Place, Mason, OH 45040-8114. On information and belief, Luxottica of America, Inc., in partnership with Meta, advertises, markets, and sells the Meta AI Glasses throughout the United States. The unfair, unlawful, deceptive, and misleading Challenged Representations and Omissions on the Products were prepared, authorized, ratified, and/or approved by Luxottica and its agents, and were disseminated throughout California and the nation by Luxottica and its agents to deceive and mislead consumers in the State of California and throughout the United States into purchasing the Meta AI Glasses.

## VI.    FACTUAL ALLEGATIONS

### A.    Background: Meta's AI Glasses

34.    In 2021, Meta partnered with EssilorLuxottica, the parent company of Ray-Ban and Oakley, to launch the Meta AI Glasses. The product line now includes multiple models sold under the Ray-Ban Meta and Oakley Meta brands, all of which share the same core hardware and software architecture: a built-in ultra-wide camera capable of recording videos and images, and a microphone array that captures spatial audio.

35.    What distinguishes the Meta AI Glasses from ordinary eyewear is not the camera and microphones, but the infrastructure behind them. The Glasses are designed to function as an ambient AI interface housed in a frame that looks nearly identical to standard Ray-Ban Wayfarers and

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

Oakley models. The built-in assistant responds to spoken prompts, allowing wearers to translate foreign-language text in real time, identify objects and landmarks, get directions, send messages, and make phone calls. Users can take hands-free photos and videos, record up to three minutes of continuous footage, and livestream first-person video directly to Facebook and Instagram, broadcasting their surroundings to an unlimited audience.

36.     Each of these functions relies on the same underlying process. When a user initiates a recording, captures an image, or invokes the AI assistant, the Glasses transmit what the wearer sees to Meta's cloud servers, where it is analyzed using visual recognition, location data, and other contextual inputs, then stored and used to train Meta's AI models. This transmission occurs in real time and in whatever environment the wearer happens to occupy, whether a public sidewalk, a private residence, a gym, or a bathroom.

**B.     Defendants Misrepresent that the Meta AI Glasses as "Designed for Privacy"**

37.     The Meta AI Glasses' ability to silently capture, transmit, and store imagery from any environment has raised serious privacy concerns. Meta's updated privacy policy for the AI Glasses in April 2025, which included requiring that certain AI features remain "always-on," only amplified consumer concern.[1] To reassure the public and drive consumer adoption, Defendants engaged in a widespread marketing and advertising campaign portraying the Glasses as a product "designed for privacy, controlled by you."[2]



[1] *Meta's Controversial Data Policy on Ray-Ban Smart Glasses Sparks Privacy Debate*, OPENTOOLS (May 1, 2025), https://opentools.ai/news/metas-controversial-data-policy-on-ray-ban-smart-glasses-sparks-privacy-debate#section0 (last visited Mar. 4, 2026).
[2] Screenshot taken from *Ray Ban Meta Glasses Product Page*, META, https://www.meta.com/ai-glasses/privacy/ (last visited Mar. 4, 2026).

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

38.    Defendants assured consumers that they will have control of their own data. On a page dedicated to the Product's privacy, they tout: "You're in control of your data and content" and "Clear, easy device and app settings" to "help you manage your information, giving you control over what content you choose to share with others, and when."[3]



39.    Defendants promote the Meta AI Glasses as "Built for your privacy and others' too," representing that Defendants have taken steps to protect the privacy of not only the user of the Meta AI Glasses, but also of the people who may be captured in photos and videos taken by users. Defendants explicitly promise that "When you use your glasses camera for AI features, we take steps to protect people's privacy, like removing key identifiable information."[4]



---

[3] *Ibid.*
[4] *Ibid.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

40.    The Meta AI Glasses website even offers tips for consumers on "How to wear your Ray-Ban Meta glasses responsibly," in order to make others feel "safe and comfortable while you're wearing your glasses," implying that safety and privacy are important to Defendants, and that it is possible for consumers to use the Product in a way that keeps data privacy "safe."[5]

41.    In reality, users of Meta AI Glasses cannot control what happens to their data, or the data they capture of the people around them. Defendants are certainly not keeping this data "safe." Instead, Meta feeds consumer data—captured by consumers through their Meta AI Glasses—to a subcontractor called Sama.[6] At Sama's headquarters in Nairobi, Kenya, thousands of people working as "data annotators" review this sensitive user data, annotating it with labels like "cars," "lamps," and "people" in order to train artificial intelligence used in Meta products.[7]

42.    Individuals working as "data annotators" report seeing deeply private video clips, including videos of bathroom visits, sex, and other personal moments.[8] One person recounted seeing a video wherein a man placed his Meta AI Glasses on a bedside table and left the room.[9] Afterwards, his wife entered the room and, unknowingly, changed clothes in front of the Meta AI Glasses.[10] The video was sent to people halfway around the world to view and annotate in order to train AI—all without the woman's knowledge that the video of her had been captured in the first place.[11]

43.    Other data annotators report seeing videos with visible bank cards, private text exchanges, and other private information. This sensitive data lives in Meta's database, viewed by human data annotators and available indefinitely for use to Meta's AI products.[12]

44.    Despite Defendants' advertised promises that they would "take steps to protect people's privacy, like removing key identifiable information," and despite their reported policy of automatically blurring faces that appear in annotation data, human data annotators in Kenya reported

---

[5] *Id*.
[6] *She Came Out of the Bathroom Naked, Employee Says*, SVENSKA DAGBLADET (Feb. 27, 2026), https://www.svd.se/a/K8nrV4/metas-ai-smart-glasses-and-data-privacy-concerns-workers-say-we-see-everything (last visited Mar. 4, 2026).
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

that, in fact, the anonymization did not always work, and faces that should have been covered were sometimes still visible.[13]

45.    The consumer data is extremely valuable to Meta. New data input is central to AI production, but as AI labs exhaust publicly available data, proprietary sources of new data can cost hundreds of millions of dollars.[14] But instead, Meta can farm personal data from unknowing consumers who have already purchased the Products—turning consumers themselves into commodities without them ever knowing it.

**C.    Defendants Knowingly Omit and Conceal that Meta's Employees and Contractors Review Intimate Content Captured by the Meta AI Glasses**

46.    Despite marketing the Meta AI Glasses as "designed for privacy" and equipped with "robust measures to protect user data," Meta failed to disclose that intimate videos, images, and audio are routinely captured by the Glasses, transmitted to Meta's servers, and reviewed by Defendants' employees and contractors. This material omission directly contradicts Meta's affirmative privacy claims and has resulted in the exposure of consumers' most intimate moments to thousands of strangers.

47.    These undisclosed practices – and what Meta does with the users' highly sensitive data – were material to reasonable consumers deciding whether to purchase the Meta AI Glasses. A reasonable consumer would not expect that the footage captured by Meta AI Glasses worn in everyday life would be transmitted to third-party human contractors for review and analysis of the most intimate and private moments. This is particularly concerning given that these Glasses accompany users throughout their daily routines – in their homes, bathrooms, bedrooms, and other private spaces, capturing deeply private moments: changing clothes, using the toilet, engaging in sexual activity, caring for children, and more.

48.    The exposure to such recordings would be profoundly unexpected to reasonable consumers. Users might anticipate that wearable AI Glasses process visual data automatically to improve functionality, but they would not reasonably expect strangers from other countries to be

---

[13] *Id.*

[14] Hamidah Oderinwale and Anna Kazlauskas, *The Economics of AI Training Data: A Research Agenda*, ARXIV (Oct. 2025), https://arxiv.org/html/2510.24990 (last visited Mar. 4, 2026).

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

watching their highly intimate moments.

49.    Transmitting users' most intimate recordings to overseas contractors also created obvious and foreseeable risks. Once such recordings are sent to third-party human contractors, these individuals can copy, retain, distribute, and exploit the recordings – be it for harassment, blackmail, public dissemination, or other reasons. Defendants' omission regarding the use, transmission, and sharing of this data deprived consumers of material information necessary to decide whether to purchase or use these Glasses.

50.    Defendants have known since their initial launch of the Meta AI Glasses in 2021 that human review of videos, audio, and images from users would expose intimate content. Indeed, the inherent risks of human review of user-generated content captured by always-on wearable cameras are well established in the technology industry—putting Defendants on direct notice that consumers expect disclosure of human review practices and that failure to disclose them creates significant privacy harms.

51.    Despite their actual knowledge of the human review pipeline and the inherent safety and privacy risks associated with such sharing of data, Defendants have continued to market the Glasses using the same "designed for privacy" representations.

52.    By highlighting the Meta AI Glasses' privacy features, while concealing the critical fact that intimate footage is routinely reviewed by Defendants' employees and contractors, Defendants created a false impression that the Glasses provided comprehensive protection of user privacy, when in reality the marketed privacy features only provide limited protection against certain surface-level device interactions and do nothing to prevent the most significant privacy risk that the Glasses pose: the exposure of intimate footage to strangers.

**D.    Defendants' Omissions Implicate a Central Function of the Meta AI Glasses and Present an Unreasonable Safety Risk to Consumers**

53.    Defendants' failure to disclose the human review pipeline implicates and materially affects the central function of the Meta AI Glasses. Defendants marketed the Products' privacy architecture as core product features, which are essential to a camera and microphone designed to be worn on a user's face throughout daily life, including intimate and private settings. Any consumer

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

who does not wish to have their most intimate moments transmitted to Meta's servers and reviewed by offshore human contractors is left with a $299 to $799 pair of sunglasses frames with no AI or "smart" functionality whatsoever.

54.     Independent of the impact on the central function of the Glasses, Defendants' omission also presents an unreasonable safety issue to consumers. The undisclosed human review pipeline renders the Meta AI Glasses' privacy features materially misleading, transforms the product from a personal device into a surveillance conduit, and exposes consumers to unreasonable risks of dignitary harm, emotional distress, stalking, extortion, identity theft, and reputational injury. Indeed, Meta employees and contractors have described viewing credit card numbers, nudity, sexual activity, and identifiable faces in the footage they reviewed, and reported that Meta's purported anonymization safeguards do not reliably function. The exposure of such content to thousands of unknown individuals creates a persistent and unreasonable risk of harm that Meta's marketed privacy features were represented to, but do not, prevent.

## VII.    TOLLING OF STATUTE OF LIMITATIONS

### A.    Discovery Rule

55.     Defendants' knowing and active concealment and denial of the facts alleged herein toll any applicable statute(s) of limitations. Plaintiffs and Class members could not reasonably have discovered the true nature and extent of Meta's collection, transmission, storage, and use of data captured through the Meta AI Glasses until the facts alleged herein became known.

56.     Plaintiffs and Class members had no reasonable ability to discover, within the applicable statute of limitations, that Defendants were misrepresenting the privacy protections, data practices, and safeguards of the Meta AI Glasses, and could not have discovered through the exercise of reasonable diligence that Defendants were concealing such information and misrepresenting the features, capabilities, privacy controls, reliability, functionality, characteristics, and performance of the Meta AI Glasses.

57.     Any statutes of limitation otherwise applicable to any claims asserted herein thus have been tolled by the discovery rule.

**B.      Fraudulent Concealment**

58.      All applicable statutes of limitations have also been tolled by Defendants' knowing, active, and ongoing fraudulent concealment of the material facts alleged herein.

59.      Defendants had a duty to disclose, among other things, the true scope and nature of the data collection, transmission, retention, and use practices associated with the Meta AI Glasses, because such practices are central to the privacy and functionality of the product and were the subject of Defendants' own affirmative marketing representations.

60.      Despite their knowledge, Defendants actively concealed these material facts from Plaintiffs and Class members while continuing to profit from the sale of Meta AI Glasses they marketed as a product "designed for privacy, controlled by you."

61.      As a result of Defendants' active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**C.      Estoppel**

62.      Defendants had a duty to disclose to Plaintiffs and Class members the true character, nature, and quality of the Meta AI Glasses, including the facts that the Glasses transmit user and bystander data to Meta's cloud servers for analysis and AI model training, that the LED privacy indicator is inadequate as a bystander notice mechanism, and that the privacy protections Meta marketed were false.

63.      Instead, Defendants concealed the true character, nature, and quality of the Meta AI Glasses and knowingly made misrepresentations about the privacy protections, data practices, reliability, functionality, characteristics, and performance of the Meta AI Glasses.

## VIII.      CLASS ACTION ALLEGATIONS

64.      **Class Definition.** Plaintiffs bring this action as a class action on behalf of themselves, and all others similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23(a) and 23(b)(3) defined as follows:

**Nationwide Class:**

All persons or entities who purchased the Product in the United States.

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

**California Subclass:**

All persons or entities who purchased the Product in the State of California.

**New Jersey Subclass:**

All persons or entities who purchased the Product in the State of New Jersey.

65.    Collectively, the Nationwide Class and the New Jersey and California Class (together, "**State Subclasses**") are referred to as the "**Classes**".

66.    "**Products**," "**Glasses**," and "**Meta AI Glasses**" are collectively defined and referred to herein as the following products: Ray-Ban Meta Gen 1 (Skyler), Ray-Ban Meta Gen 1 (Headliner), Ray-Ban Meta Gen 2 (Wayfarer), Ray-Ban Meta Gen 2 (Skyler), Ray-Ban Meta Gen 2 (Headliner), Oakley Meta HSTN, Oakley Meta Vanguard, and Meta Ray-Ban Display (Wayfarer).

67.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

68.    **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

69.    **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. The Nationwide Class consists of millions of purchasers dispersed throughout the United States, and the State Subclasses likewise consist of at least thousands of purchasers (if not more) dispersed throughout the State of California and State of New Jersey. Accordingly, it would be impracticable to join all members of the Class before the Court.

70.    **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.    Whether Defendants engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products;

b.    Whether Defendants' conduct of advertising and selling the Products was false or deceptive;

c.    Whether Defendants' conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

d.    Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

e.    Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

f.    Whether Defendants' Challenged Representations and Omissions are deceptive in violation of California Business and Professions Code sections 17500, *et seq*.;

g.    Whether Defendants' advertising and marketing of the Products are misleading in violation of California Business and Professions Code section 17500, *et seq*.;

h.    Whether Defendants knew or by the exercise of reasonable care should have known their advertising and marketing were and are misleading in violation of California Business and Professions Code section 17500, *et seq*.;

i.    Whether Defendants' Challenged Representations and Omissions represent that the Products have characteristics, uses, or benefits, which they do not have, in violation of California Civil Code section 1770(a)(5);

j.    Whether Defendants' Challenged Representations and Omissions represent that the Products are of a particular standard, quality, or grade when they are of another, in violation of California Civil Code section 1770(a)(7);

k.    Whether Defendants' Challenged Representations and Omissions advertise the Products with the intent not to sell as advertised in violation of California Civil Code section 1770(a)(9);

l.      Whether Defendants' Challenged Representations and Omissions are material under New Jersey Statute sections 56:8-1, *et seq.*;

m.      Whether Defendants intended to mislead Plaintiffs and New Jersey Subclass members with their Challenged Representations and Omissions in violation of New Jersey Statute sections 56:8-1, *et seq.*;

n.      Whether Defendants affirmatively misrepresented the capabilities, quality, and nature of the Products and knew their misrepresentations are material to consumers;

o.      Whether Defendants have a duty to disclose the omitted facts that are material to consumers with their Challenged Representations and Omissions;

p.      Whether Defendants knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, or otherwise represented or suitable for their intended use and were otherwise not as warranted and represented by Defendants;

q.      Whether Defendants breached the terms of their contracts with the consumers, including the express warranties, by not providing Products that conform to the advertising and marketing claims;

r.      Whether Defendants breached the implied warranty of merchantability to Plaintiffs and the Class in their Challenged Representations and Omissions;

s.      Whether Plaintiffs and the Class paid more money for the Products than they actually received;

t.      How much more money Plaintiffs and the Class paid for the Products than they actually received;

u.      Whether Plaintiffs and the Class are entitled to injunctive relief; and

v.      Whether Defendants were unjustly enriched by their unlawful conduct.

71.     **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

72.     **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members that

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

Plaintiffs seek to represent because Plaintiffs, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

73.    **Adequacy.** Plaintiffs are adequate representatives of the Class they seek to represent because Plaintiffs' interests do not conflict with the interests of the Class Members. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

74.    **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendants, among other records within Defendants' possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories. All Meta AI Glasses have to be registered when activated, during which time, Meta collects the information about the user including their email addresses and more – and thus maintains information regarding the purchasers.

75.    **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

  a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

  b.    Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

c.     Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.     When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.     This action presents no difficulty that would impede the management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendants.

76.   **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

77.   **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

78.   **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

79.   **Issues Class.** Alternatively, Plaintiffs seek certification pursuant to Federal Rule of Civil Procedure 23(c)(4) on behalf of the above-defined classes for some or all the issues identified in the commonality and predominance section, above, as well as other issues which may be later identified.

CLASS ACTION COMPLAINT

IX.    CAUSES OF ACTION

COUNT ONE

VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

(Brought By Plaintiffs on the Nationwide Class, or Alternatively, the California Subclass)

80.    Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

81.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass.

82.    California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

83.    Defendants, in their pervasive advertising and marketing of the Products, made misleading statements regarding the quality and characteristics of the Products—specifically, the Challenged Representations and Omissions regarding the data safety and privacy of consumers of Meta AI Glasses. Instead, Meta funnels the consumer data, including sensitive videos captured with Meta AI Glasses, to be viewed and annotated by human "data annotators," all so that Meta could use the videos in training Defendants' own AI model.

84.    Defendants do not have any reasonable basis for the Challenged Representations and Omissions made in Defendants' advertising because Defendants did not maintain consumers' data privacy. Thus, the Products fail to deliver the advertised functionality for everyday use and during various activities, as directed and intended by Defendants. Defendants knew (and knows) that they do not maintain the privacy of consumer data captured by the Products, posing a misrepresentation of their functionality, and yet Defendants intentionally advertised and marketed the Products to deceive reasonable consumers and continues to do so presently.

85.    Defendants' advertising and marketing of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that they will be able to maintain the

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

privacy and control of their data while using the Products as Defendants advertised.

86.    Plaintiffs and the Class members have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations—namely Plaintiffs and the Class members lost the purchase price for the Products they bought from the Defendants.

87.    Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

88.    Defendants failed to avail themselves of reasonably available, lawful alternatives to further their legitimate business interests.

89.    All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter their conduct or Defendants are otherwise ordered to do so.

90.    Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the Class seek an order from this Court enjoining Defendants from continuing to engage, use, or employ their practice of false and deceptive advertising and marketing of the Products. Likewise, Plaintiffs and the members of the Class seek an order requiring Defendants to disclose such misrepresentations, and to preclude Defendants' failure to disclose the existence and significance of said misrepresentations.

91.    As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiffs and the Class members were harmed in the amount of the purchase price they paid for the

Products. Further, Plaintiffs and the Class members have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class members for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

### *"Unfair" Prong*

92.    Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

93.    Defendants' action of falsely advertising the Products with the Challenged Representations and Omissions encouraged consumers to purchase the Products with the expectation that they would maintain privacy and control over their data while using the Products, as advertised. However, the consumer data is not kept private or protected as advertised, causing financial injuries to consumers, who do not receive Products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendants' deceptive advertising and marketing of the Products. Accordingly, the injuries caused by Defendants' deceptive advertising and marketing outweigh any benefits.

94.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

95.    Here, Defendants' conduct of falsely advertising that consumers' data privacy would be protected while using the Product despite subjecting consumer data to human review results in financial harm to consumers. Thus, the utility of Defendants' conduct is vastly outweighed by the

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

1  gravity of the harm.

2      96.    Some courts require that "unfairness must be tethered to some legislative declared

3  policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless*

4  *Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

5      97.    Defendants' advertising and marketing of the Products, as alleged herein, is deceptive,

6  misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have

7  known of their unfair conduct. Defendants' misrepresentations constitute an unfair business practice

8  within the meaning of California Business and Professions Code Section 17200.

9      98.    There existed reasonably available alternatives to further Defendants' legitimate

10  business interests, other than the conduct described herein. Defendants could have refrained from

11  labeling the Products with the Challenged Representations and Omissions.

12      99.    All of the conduct alleged herein occurs and continues to occur in Defendants'

13  business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct

14  repeated on thousands of occasions daily.

15      100.    Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the Class

16  members seek an order of this Court enjoining Defendants from continuing to engage, use, or

17  employ their practices of advertising and marketing the Products with the Challenged

18  Representations and Omissions.

19      101.    Plaintiffs and the Class members have suffered injury in fact, have lost money and

20  purchased an inferior product as a result of Defendants' unfair conduct. Plaintiffs and the Class

21  members paid an unwarranted premium for these Products. Specifically, Plaintiffs and the Class

22  members paid for Products which were advertised as maintaining consumers' privacy and control

23  over data. Plaintiffs and the Class members would not have purchased the Products, or would have

24  paid substantially less for the Products, if they had known that the Products' advertising and

25  marketing were deceptive. Accordingly, Plaintiffs seek restitution and/or disgorgement of ill-gotten

26  gains pursuant to the UCL.

27                          ***"Fraudulent" Prong***

28      102.    The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

103.    Defendants used the Challenged Representations and Omissions with the intent to sell the Products to consumers, including Plaintiffs and the Class members. The Challenged Representations and Omissions are deceptive, and Defendants knew, or should have known, of their deception. The Challenged Representations and Omissions are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

104.    As alleged herein, the misrepresentations by Defendants constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

105.    Plaintiffs and the Class members reasonably and detrimentally relied on the material and deceptive Challenged Representations and Omissions to their detriment in that they purchased the Products.

106.    Defendants have reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Challenged Representations and Omissions.

107.    Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

108.    Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the Class members seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising and marketing the Products with the Challenged Representations and Omissions.

109.    Plaintiffs and the Class members have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiffs paid an unwarranted premium for the Products. Specifically, Plaintiffs and the Class members paid for Products for which Defendants advertised that consumers would maintain privacy and control over their personal data. Instead, Defendants used consumers' captured data for human review by subcontractors and for training of Meta's AI models. Accordingly, Plaintiffs seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

23

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

***"Unlawful" Prong***

110.    The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

111.    Defendants' advertising and marketing of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

112.    Additionally, Defendants' use of the Challenged Misrepresentations and Omissions to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

113.    Defendants' conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendants' misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated in this lawsuit.

114.    Defendants' advertising and marketing of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendants knew or should have known of their unlawful conduct.

115.    Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from advertising the Products with the Challenged Representations and Omissions.

116.    All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

CLASS ACTION COMPLAINT

117.   Pursuant to Business and Professions Code Section 17203, Plaintiffs and the Class members seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of deceptive advertising of the Products.

118.   Plaintiffs and the Class members have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiffs and the California Class members paid an unwarranted premium for the Products. Plaintiffs and the Class members would not have purchased the Products if they had known about the Challenged Omissions. Accordingly, Plaintiffs seek restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

<u>COUNT TWO</u>

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

**(Brought by Plaintiffs on Behalf of the Nationwide Class, or Alternatively, the California Subclass)**

119.   Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

120.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass.

121.   The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

122.   Defendants violated section 17500 when they advertised and marketed the Products through the unfair, deceptive, and misleading Challenged Representations and Omissions disseminated to the public through the Products' advertising and marketing. These representations were deceptive because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

123.   In making and disseminating the Challenged Representations and Omissions alleged herein, Defendants knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

124.    Defendants' Challenged Representations and Omissions were specifically designed to induce reasonable consumers, like Plaintiffs and the Class members, to purchase the Products.

125.    As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiffs and the Class members were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class members for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result, as well as a corrective advertising campaign to correct prior misrepresentations.

**COUNT THREE**

**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

**(Brought by Plaintiffs on Behalf of the Nationwide Class, or Alternatively, the California Subclass)**

126.    Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

127.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass.

128.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

129.    The Products are "goods," as defined by the CLRA in California Civil Code §1761(a) because they are tangible objects that Plaintiffs and the Class purchased primarily for personal, family, or household purposes.

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

130.    Defendants are "persons," as defined by the CLRA in California Civil Code §1761(c) because they are corporations.

131.    Plaintiffs and Class members are "consumers," as defined by the CLRA in California Civil Code §1761(d) because they are individuals who purchased the Products for personal, family, or household purposes.

132.    The purchases of the Products by Plaintiffs and the Class members are "transactions" as defined by the CLRA under California Civil Code section 1761(e) because Plaintiffs and the Class members entered into agreements with Defendants or their authorized vendors to purchase the Products.

133.    Defendants violated the following sections of the CLRA by selling the Products to Plaintiffs and the Class through the misleading, deceptive, and fraudulent Challenged Representations and Omissions:

      a.    Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

      b.    Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . when they are of another."

      c.    Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [] as advertised."

134.    Defendants' uniform and material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their Challenged Representations and Omissions were misleading.

135.    Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sale of the Products.

136.    Plaintiffs and Class members could not have reasonably avoided such injury. Plaintiffs and the Class members were unaware of the existence of the facts that Defendants suppressed and failed to disclose, and Plaintiffs and the Class members would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

CLASS ACTION COMPLAINT

137.   Plaintiffs and the Class members suffered harm as a result of Defendants' violations of the CLRA because they relied on the Challenged Representations and Omissions in deciding to purchase the Products. The Challenged Representations and Omissions were a substantial factor. The Challenged Representations and Omissions were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

138.   As a direct and proximate result of Defendants' misconduct in violation of the CLRA, Plaintiffs and the Class members were harmed in the amount of the purchase price they paid for the Products. Accordingly, Plaintiffs seek a monetary award for violation of this Act in the form of restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class members for said monies.

139.   Pursuant to Section 1780(a) of the Act, Plaintiffs seek injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants, including, but not limited to, an order enjoining Defendants from continuing to make the misleading claims and omissions challenged herein and requiring Defendants to undertake a corrective advertising campaign to correct their prior false and misleading representations. Plaintiffs also request a court order requiring Defendants to provide restitution to Plaintiffs and the Class for the money wrongfully acquired. Unless this injunctive relief is granted, Plaintiffs will suffer irreparable harm.

140.   Plaintiffs respectfully request that the Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendants should be compelled to provide restitution to consumers who paid for Products that are not what they expected to receive due to Defendants' misrepresentations.

141.   Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

142.   Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendants have failed to make the Challenged Omissions clear—i.e., that consumers cannot maintain privacy or control over their personal data while using the Product. Injunctive relief is necessary to correct past harm and prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of advertising or marketing

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

28

modifications as well as a corrective advertising campaign, is necessary to dispel public misperception about the Products that has resulted from Defendants' unfair, fraudulent, and unlawful marketing efforts. Such modifications would include maintaining consumer data privacy as advertised, or making clear to consumers that they will not be able to maintain privacy and control over their personal data. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendants' future harm (e.g., the dollar amount that Plaintiffs and Class members overpay for the Products), rendering injunctive relief a necessary remedy.

## COUNT FOUR

### NEW JERSEY CONSUMER FRAUD ACT

### (N.J. Stat. §§ 56:8-1, *et seq.*)

### (Brought by Plaintiff Bartone on behalf of the New Jersey Subclass)

143.  Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

144.  Plaintiff Bartone (for purposes of this Count "Plaintiff") brings this claim on behalf of herself and the New Jersey Subclass.

145.  Each Defendant is a "person," as defined by N.J. Stat. § 56:8-1(d).

146.  Defendants sell "merchandise," as defined by N.J. Stat. § 56:8-1(c) & (e).

147.  The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

148.  Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

149.   Defendants intended to mislead Plaintiffs and New Jersey Subclass members and induce them to rely on Defendants' misrepresentations and omissions.

150.   Defendants acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded Plaintiff and New Jersey Subclass members' rights.  Defendants' knowledge that they shared consumer data with subcontractors for review and data annotation put them on notice that the Meta AI Glasses were not as advertised.

151.   As a direct and proximate result of Defendants' unconscionable and deceptive practices, Plaintiff and New Jersey Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Meta AI Glasses.

152.   Plaintiff and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including any equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

<u>COUNT FIVE</u>

**FRAUD BY MISREPRESENTATION**

**(Brought by Plaintiffs on behalf of the Nationwide Class, or Alternatively, the State Subclasses)**

153.   Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

154.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass. This claim is brought under California law or, alternatively, the laws of the respective states where Plaintiffs and Class members purchased the Products.

155.   Defendants affirmatively misrepresented the capabilities, quality, and nature of the Products when selling and marketing them.

156.   Defendants also knew that their misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendants' representations in making purchasing decisions.

157.   Plaintiffs and Class Members did not know—nor could they have known through

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

reasonable diligence—about the true nature of the Products.

158.   Plaintiffs and Class Members would have been reasonable in relying on Defendants' misrepresentations in making their purchasing decisions.

159.   Plaintiffs and Class Members had a right to rely upon Defendants' representations as Defendants maintained monopolistic control over knowledge of the true quality of the Products.

160.   Plaintiffs and Class Members sustained damages as a result of their reliance on Defendants' misrepresentations, thus causing Plaintiffs and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT SIX

## FRAUD BY CONCEALMENT/OMISSION

**(Brought by Plaintiffs on behalf of the Nationwide Class, or Alternatively, the State Subclasses)**

161.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

162.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass. This claim is brought under California law or, alternatively, the laws of the respective states where Plaintiffs and Class members purchased the Products.

163.   Defendants made Material Omissions concerning a presently existing or past fact in that, for example, Defendants did not fully and truthfully disclose to their customers that they would be unable to maintain privacy and control of their data while using the Product, and that Defendants would subject consumers' captured data to review and data annotation by subcontractors for the purpose of training Meta's AI model. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding whether to purchase Defendants' Products and similar technology.

164.   Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

CLASS ACTION COMPLAINT

165.   In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants, who had superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and the Class members. These omitted facts were material because they directly impact the privacy and safety of sensitive consumer data.

166.   Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class members. Defendants also possessed exclusive knowledge of the Material Omission.

167.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Class members to purchase the Products at a higher price, which did not match the Products' true value.

168.   Plaintiffs and the Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Class members were justified.

169.   Plaintiffs and the Class members reasonably relied on these omissions and suffered damages as a result.

170.   As a result of these omissions and concealments, Plaintiffs and the Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase of the Products.

171.   As a result of the concealment and/or suppression of the facts, Plaintiffs and the Class members sustained damage. Plaintiffs and the Class members reserve their right to elect either to (a) rescind their purchase of the Products and obtain restitution or (b) affirm their purchase of the Products and recover damages.

172.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs and the Class members. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

1

**COUNT SEVEN**

2

**NEGLIGENT MISREPRESENTATION**

3

**(Brought by Plaintiffs on behalf of the Nationwide Class, or Alternatively the State**

4

**Subclasses)**

5

173.   Plaintiffs restate and reallege the preceding factual allegations set forth above as if

6

fully alleged herein.

7

174.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or

8

alternatively, the California Subclass. This claim is brought under California law or, alternatively,

9

the laws of the respective states where Plaintiffs and Class members purchased the Products.

10

175.   Defendants had a duty to Plaintiffs and the Class to exercise reasonable and ordinary

11

care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the

12

Products.

13

176.   Defendants breached their duty to Plaintiffs and the Class by advertising the products

14

as having capabilities they do not actually have.

15

177.   Defendants knew or should have known that the qualities and characteristics of the

16

Products were not as advertised, marketed, detailed, or otherwise represented or suitable for their

17

intended use and were otherwise not as warranted and represented by Defendants.

18

178.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have

19

suffered actual damages in that they would not have purchased the Products had they known that

20

the Products do not conform to the Product's marketing, advertising, or statements.

21

179.   Plaintiffs and the Class seek actual damages, attorney's fees, costs, and any other just

22

and proper relief available.

23

**COUNT EIGHT**

24

**BREACH OF CONTRACT**

25

**(Brought by Plaintiffs on behalf of the Nationwide Class, or Alternatively the State**

26

**Subclasses)**

27

180.   Plaintiffs restate and reallege the preceding factual allegations set forth above as if

28

fully alleged herein.

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

181.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass. This claim is brought under California law or, alternatively, the laws of the respective states where Plaintiffs and Class members purchased the Products.

182.   Defendants expressly warranted that the Products would perform as advertised. Defendants' claims regarding the Products constituted an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiffs and the Class Members placed importance on Defendants' claims.

183.   All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and the Class Members.

184.   Defendants breached the terms of the contract, including the express warranties, with Plaintiffs and the Class Members by not providing Products that conform to the advertising and marketing claims.

185.   As a result of Defendants' breach of contract, Plaintiffs and the Class Members have been damaged in the amount to be determined at trial.

## COUNT NINE

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Brought by Plaintiffs on behalf of the Nationwide Class, or Alternatively, the State Subclasses)

186.   Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

187.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass. This claim is brought under California law or, alternatively, the laws of the respective states where Plaintiffs and Class members purchased the Products.

188.   Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

189.   Defendants are "merchants" with respect to the Products at issue.

CLASS ACTION COMPLAINT

190.    In order to be merchantable, goods must conform to the promises or affirmations of fact made in the advertising of the product.

191.    Defendants breached the implied warranty of merchantability to Plaintiffs and the Class in their representations that consumers would be able to maintain privacy and control over their personal data while using the Products when this was actually false.

192.    As a result of Defendants' misleading conduct, Plaintiffs and the Class did not receive merchantable goods as impliedly warranted by Defendants.

193.    Defendants did not exclude or modify the Product's implied warranty of merchantability.

194.    As a proximate result of Defendants' breach of their implied warranty, Plaintiffs and the Class incurred harm. Plaintiffs and the Class were damaged as a result of Defendants' failure to disclose material facts regarding the Products, including that Meta collected user intimate data and transmitted it for analysis by human contractors from outside of the United States. Plaintiffs and the Class paid for a Product that did not have the promised quality and nature, paid a premium for the Product when they could have instead purchased other less expensive glasses or other products, and lost the opportunity to purchase similar products that would not have subjected them to undisclosed collection and sharing of their data.

195.    As a result of Defendants' breach of contract, Plaintiffs and the Class Members have been damaged in the amount to be determined at trial.

**COUNT TEN**

**Quasi-Contract / Unjust Enrichment**

**(Brought by Plaintiffs On behalf of the Nationwide Class, or Alternatively, the State Subclasses)**

196.    Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

197.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass. This claim is brought under California law or, alternatively, the laws of the respective states where Plaintiffs and Class members purchased the Products.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

198. To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

199. Plaintiffs and Class members conferred monetary benefits on Defendants by purchasing the Products. Defendants' profits are funded entirely from their generated revenues – payments made by or on behalf of Plaintiffs and Class Members. As such, a portion of these payments was attributable to Defendants' Challenged Representations and Omissions.

200. Defendants knew that Plaintiffs and the Class conferred a benefit which Defendants accepted, and through which, Defendants were unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendants failed to disclose that contrary to their representations, the Products did not have the technical capabilities they had advertised, these misleading representations caused injuries to Plaintiffs and Class members because they would not have purchased the Product if the true facts were known.

201. Defendants enriched themselves by saving the costs they reasonably should have spent on ensuring that the Products had the technical capabilities advertised, and conform with their advertised representations.

202. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants have been unjustly enriched in an amount to be determined at trial.

## X.      PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the following from this Court:

a.      **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representative, and appointing Plaintiffs' Counsel as Class Counsel;

b.      **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105

c.    **Injunction:** For an order requiring Defendants to change their business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, an order that immediately enjoin Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described; that require Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and/or that require Defendants to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d.    **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class requested herein, consistent with applicable law and pursuant to only those causes of action so permitted;

e.    **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f.    **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g.    **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h.    **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

/ / /

CLASS ACTION COMPLAINT

1

## **JURY TRIAL DEMANDED**

2        Plaintiffs demand a trial by jury on all issues and causes of action so triable.

3

4    Dated: March 4, 2026                      Respectfully submitted,

5                                              **CLARKSON LAW FIRM, P.C.**

6                                               */s/ Ryan J. Clarkson*
                                               Ryan J. Clarkson
7                                              Yana Hart
                                               Mark I. Richards
8                                              Cassandra Rasmussen
                                               Jiaming Zheng
9                                              22525 Pacific Coast Highway
                                               Malibu, CA 90265
10                                             Tel: (213) 788-4050
11
                                               *Attorneys for Plaintiffs and*
12                                             *the Proposed Classes*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Clarkson Law Firm, P.C. | 633 Howard Street | San Francisco, CA 94105*