Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Yana Hart (SBN 306499)
yhart@clarksonlawfirm.com
Cassandra Rasmussen (pro hac vice)
crasmussen@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
633 Howard St.
San Francisco, CA 94105
Telephone: (415) 651-7990
Facsimile: 213-788-4070

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
**COTCHETT PITRE & MCCARTHY**
840 Malcom Road
Burlingame, CA 98101
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Interim Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

*In re Meta AI Glasses Litigation*

This document relates to:
All actions

Master File Case No.: 3:26-cv-01897-EMC

Assigned to Hon. Edward M. Chen

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO PROCEED PSEUDONYMOUSLY**

# I. INTRODUCTION

Defendants promised privacy for their AI Glasses—then shared private recordings, including of intimate sexual acts, with strangers for review and AI training. Now, in a lawsuit seeking to vindicate that broken promise, Defendants demand that Plaintiffs PL01–PL13 and PL15–PL17, PL22, and PL30 publicly reveal their names, forever tying them to sexual or other sensitive recordings they expected to be private. Ironically, Defendants complain that Plaintiffs did not describe their intimate acts with enough specificity to obtain the very privacy protection they seek.

Defendants' claim that consensual sex carries no stigma misconstrues Plaintiffs' argument. The stigma is disclosure, not just intimacy: public labeling as a participant in a "sex tape" invites ridicule, embarrassment, and reputational harm. Defendants are quick to claim Plaintiffs are not sexual assault victims—an insensitive characterization that ignores how Plaintiffs experienced Defendants' conduct. That their private sexual activity was shared with strangers for viewing and AI training is a profound violation. Defendants exploited one of the most private aspects of human life for financial gain, a dehumanizing act that heightens the need for pseudonymity here.

Defendants' assertion that public release of the recordings would pose insufficient risk of harm defies common sense and underscores how little Defendants value their customers' privacy despite their bold promises otherwise. Defendants' burden arguments fare no better. They are unsupported by caselaw and ignore that the primary burden inquiry has already been alleviated because Plaintiffs fully disclosed their identities to Defendants.

In contrast, forcing Plaintiffs whose experiences represent severe privacy violations into the public eye, or relegating them to unnamed class members, as Defendants also suggest, would inflict real harm and materially weaken the prosecution of these important claims. Fortunately, the law affords protection here that does not depend on Defendants themselves honoring legitimate privacy interests. Plaintiffs' motion to proceed pseudonymously should be granted.

# II. ARGUMENT

## a. Recorded Sexual Conduct Clears the Bar for Pseudonymous Litigation.

Plaintiffs' allegations concern "the most private human conduct, sexual behavior, and in the most private of places, the home." *Lawrence v. Texas*, 539 U.S. 558 (2003). Plaintiffs do not ask

the Court to shield them from the fact that they had sex – only from being *publicly* named as subjects of sexual recordings. While Plaintiffs must allege that the Glasses recorded their sexual behavior, forcing further disclosure of sexual activity in open court is not necessary to fairly adjudicate the underlying claims.

Defendants' opposition erases this distinction, treating "consensual sex" and "recorded sex" as interchangeable categories carrying identical social consequences. They are not. Recordings of intimate moments carry stigma: society labels, mocks, and judges people who appear in "sex tapes" – consensual or not – in a way that it does not judge people simply for having sex in private. Nor is it reasonable for Defendants to demand still *more* intrusive details to justify pseudonymizing Plaintiffs PL11, PL12, PL13, and PL15, but to be clear: their allegations refer to sexual activity.[1]

Recording and sharing images of sexual activity without an intimate partner's consent is criminalized in every state in the U.S.[2] None of the Plaintiffs knew that Defendants were recording their intimate moments when the Glasses' AI activated, and none consented to Defendants sharing those recordings with vendors and contractors for review. Plaintiffs allege they have suffered "mental anguish," "emotional distress," and fear associated with the "deeply offensive" intrusion into their privacy and the "ongoing risk of further unauthorized disclosure." CCAC ¶¶ 154, 208, 1166, 1180, 1191. That the violator here is a corporation rather than an intimate partner does not shrink the boundary violation or the reputational risk. *See, e.g.*, *Heineke v. Santa Clara University*, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) (anonymity for sexual assault or harassment victims "serves a strong public interest"); *see also E.E.O.C. v. ABM Industries Inc.*, 249 F.R.D. 588 (E.D. Cal. 2008) (anonymity where disclosure would cause "public humiliation"). Naming Plaintiffs publicly compounds two distinct harms: the stigma of having been recorded by Defendants *without* consent, [3] and the stigma of having engaged in recorded intimacy at all. *See, e.g.*, *JANE DOE, et al.*

---

[1] Plaintiffs will withdraw PL14 from pseudonymous designation.

[2] *The Take It Down Act*, Public Law No. 119-12 (2025), https://www.congress.gov/crs-product/LSB11314 (introduction summarizing state laws against "revenge porn").

[3] *Gender differences in videoed accounts of victim blaming for revenge porn for self-taken and stealth-taken sexually explicit images and videos*, 15 J. PSYCH. RESEARCH ON CYBERSPACE 4 (2021) https://cyberpsychology.eu/article/view/13890 (victims are often blamed for creating or storing intimate material even without ever sharing it, simply for the perceived risk that it could be stolen).

*v. X.AI CORP., et al.*, 2026 WL 2199524, at *2 (N.D. Cal. July 30, 2026) (finding severe threat of harm, including reputational risk and emotional distress, based upon deepfake sexualized images).

Plaintiffs also risk being further targeted by third parties. Contrary to Defendants' representations, the videos have already been leaked: Defendants sent them to third-party employees and contractors, and footage like this, once shared, is no longer in Plaintiffs' control. It could resurface or spread further at any time, including into the hands of individuals eager to exploit a party in a high-profile case and subjecting Plaintiffs' intimate partners to the same risk of exposure.

Courts assess the reasonableness of a plaintiff's fear by considering the "effect on other listeners" of the threatened harm. *Doe v. Kamehameha Schools*, 596 F.3d 1036, 1044–45 (9th Cir. 2010). Reaction from the public, when learning about Meta AI Glasses filming individuals without their knowledge or consent, particularly during sexual activity, has been widespread shock at "a full-blown privacy nightmare."[4] By any legal or societal standard, Plaintiffs' fear of having their names attached to these allegations is more than reasonable.

*Doe v. Pentz* is inapposite, and turned on retaliation risk against a public figure, not privacy in sexual conduct; even the plaintiff in that case acknowledged that the privacy question had not been sufficiently briefed. 2024 WL 7006712, at *2, 4 (C.D. Cal. Dec. 31, 2024). Nor do *Doe v. UNUM Life Insurance* or *Roe v. Skillz, Inc*. touch upon the privacy concern at issue here—the illicit record and sharing of Plaintiffs' sexual activities. 858 Fed. Appx. (9th Cir. 2021). *Doe v. Lombardo* found no privacy interest in large part because the plaintiff did not appear to have kept her identity private through the use of a stage name during her employment as a sex worker. 2024 WL 4536772, at *7 (D. Nev. Oct. 18, 2024). In contrast, Plaintiffs here have never been publicly linked to the recordings.

**b. Plaintiffs should not be punished for previously using full names in complaints that omitted details of their own sex-related videography.**

Some plaintiffs moving to proceed pseudonymously previously used full names in prior complaints, before they disclosed, for the *first time* in the consolidated complaint that Defendants

[4] *See, e.g.*, *Meta's AI smart glasses are recording people having sex – and yes, it's a full-blown privacy nightmare*, STUFF (May 1, 2026), https://www.stuff.tv/news/metas-ai-smart-glasses-are-recording-people-having-sex-and-yes-its-a-full-blown-privacy-nightmare/ (last visited Sept. 9, 2026).

surreptitiously recorded their own intimate experiences.[5] Defendants admit that prior complaints made general allegations that Defendants shared videos of "bathroom visits, sex and other intimate moments," and that in the CCAC, Plaintiffs added "some details." *See* ECF No. 109 at 4:19–22.

"Some details" is putting it lightly. Prior to the initial complaints, news outlets had already widely reported the nature of what Defendants shared with third parties.[6] The initial complaints in this matter and the related cases shared that news, but included no personal details about named Plaintiffs' own private recordings of intimate sexual conduct. This case is therefore distinguishable from *Hinckley*, in which the sexual assault allegations had previously been disclosed along with the plaintiff's full name. *Hinckley v. All American Waste Services Inc*., 2025 WL 1940001, at *4–5 (D. Az. July 15, 2025). *Stoterau* is likewise inapposite, as both Stoterau's name and conviction were already public. *U.S. v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008). With at least thirteen related cases filed, naming 48 total plaintiffs – less than half later named in the CCAC – no one could (and still cannot) reliably connect a given Plaintiff's name in an earlier complaint to the intimate-recording allegations now raised, absent the confidential key Plaintiffs provided to Defense. Defendants used that key to publicly make the connection between 11 Plaintiffs and prior complaints– improperly, and without redaction, in an attempt to strip Plaintiffs of the confidentiality they sought.

In any event, prior use of a true name does not defeat a later, well-founded need for anonymity: "Past acts of bravery in the face of danger is poor rationale for denying the courageous individual protection against future harm." *Does I thru XXIII v. Advanced Textile Corp.,* 214 F. 3d 1058, 1069 n. 11 (9th Cir. 2000). And the same prior disclosure cuts against Defendants, not Plaintiffs – Defendants already knew these Plaintiffs' identities, which "only lessens their claims to be prejudiced by the use of pseudonyms." *Id*.

Defendants also misread *Doe v. UNUM*. That case explains why the Ninth Circuit, unlike some circuits, does not require leave of court before filing an initial pseudonymous filing, since a

[5] Defendants agreed to pseudonymize "parents/guardians of minor Plaintiffs" and those "whose allegations involve other minors." ECF 109 at 1:5-6. PL04, PL06, and PL07 fall within that category, so their pseudonyms should be uncontested, despite not being listed as unopposed. *Id*.

[6] *See, e.g.*, Naipanoi Lepapa, Ahmed Abdigadir & Julia Lindblom, *She Came Out of the Bathroom Naked, Employee Says*, Svenska Dagbladet (Feb. 27, 2026).

public complaint under a real name already forecloses later anonymity for the same allegations. *Doe v. UNUM*, 164 F. Supp. 3d 1140, 1144 (N.D. Cal. 2016). It says nothing about whether a plaintiff named in one filing may later seek pseudonymity where they raise different, newly pleaded allegations alongside a multitude of other persons.

**c. Plaintiffs' Privacy Outweighs Public Interest and Any Prejudice to Defendants.**

Defendants suggest a protective order could substitute for pseudonymity. It cannot: Plaintiffs seek to shield their identities in connection with their allegations in the CCAC, and a protective order governing the recordings' handling does nothing to prevent that link from becoming public.

Defendants' proposal that privacy-concerned Plaintiffs simply "dismiss their complaints and proceed, without publicly disclosing their names, as class members" (ECF 109 at 5:20–21) would strip the Class of strong representation from those wishing to share their stories and vindicate others from Defendants' privacy invasions—and leave ten subclasses without any class representatives.

Defendants stack four additional cases for the proposition that class members have a "compelling public interest" in knowing who litigates on their behalf, but that interest is fully satisfied here: twenty-seven Plaintiffs already represented the Class under their full names. Defendants do not argue (nor can they) that cases require that *every* representative be named before the public interest in transparency is served. Defendants' own position confirms as much: they do not oppose pseudonymity for minor plaintiffs and their guardians. If a compelling public interest in knowing a class representative's identity truly outweighed that representatives' privacy, no plaintiff in any class action could proceed pseudonymously.

Defendants also fail to identify or quantify any purported burden to them if Plaintiffs proceed pseudonymously. Defendants do not oppose pseudonymity for twenty-eight plaintiffs. Any incremental administrative burden of the remaining pseudonyms is minimal. Plaintiffs have already provided Defendants with a list of Plaintiffs proceeding pseudonymously. Defendants identified no specific costs, procedures they believe are necessary, nor concrete instances of confusion.

## III. <u>CONCLUSION</u>

Given the highly sensitive nature of Plaintiffs' factual allegations, Plaintiffs respectfully request permission to litigate pseudonymously.

DATED: September 11, 2026

Respectfully Submitted,

/s/ Ryan J. Clarkson
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Yana Hart (SBN 306499)
yhart@clarksonlawfirm.com
Cassandra Rasmussen (pro hac vice)
crasmussen@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
633 Howard St.
San Francisco, CA 94105
Telephone: (415) 651-7990
Facsimile: 213-788-4070

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
**COTCHETT PITRE & MCCARTHY**
840 Malcom Road
Burlingame, CA 98101
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Interim Co-Lead Counsel*